IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JEFFREY J. SPERRAZZA | : | |
| | : | |
| Appellant | : | CIVIL ACTION |
| | : | |
| vs. | : | |
| | : | NO.  07-CV-792 |
| UNIVERSITY OF MARYLAND, ET AL. | : | |
| | : | |
| | : | |
| Appellees | : | |

**<u>MEMORANDUM OPINION & ORDER</u>**

GOLDEN, J.                                                    MARCH 24, 2008

  Before the Court is Jeffrey J. Sperrazza's appeal o

f the United States Bankruptcy Court for the Eastern District of Pennsylvania's denial of his

request to discharge his educational loans under 11 U.S.C. § 523(a)(8).  The Court will affirm the

Bankruptcy Court's decision for the reasons that follow.

**STANDARD OF REVIEW**

  The Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 158(a), and reviews

the Bankruptcy Court's decision as an appellate court with the power to affirm, reverse, modify,

or remand with instructions for further proceedings.  Fed. R. Bankr. P. 8013.  A district court

reviews the Bankruptcy Court's findings of fact for clear error and examines its legal conclusions

*de novo*.  <u>See</u>, <u>e.g.</u>, <u>Interface Group-Nevada, Inc. v. Trans World Airlines, Inc. (In re Trans World</u>

<u>Airlines, Inc.)</u>, 145 F.3d 124, 131 (3d Cir. 1998).

  Sperrazza is proceeding *pro se*, and the Court is mindful of its duty to construe his

pleadings liberally, and "apply the applicable law, irrespective of whether [Sperrazza] has

mentioned it by name."  <u>Dluhos v. Strasberg</u>, 321 F.3d 365, 369 (3d Cir. 2003).  In that regard,

the Court accepted Sperazza's brief even though he filed it nearly five months late (Document No. 5).  Sperazza's *pro se* status notwithstanding, the Court cannot cure substantive defects in his case.  See, e.g., Floyd v. Brown & Williamson Tobacco Corp., 159 F. Supp. 2d 823, 832 (E.D. Pa. 2001) (dismissing *pro se* claims for failure to comply with Rules of Civil Procedure); Smith v. Soc. Sec. Admin., 54 F. Supp. 2d 451, 454 (E.D. Pa. 1999) (dismissing *pro se* complaint for failure to exhaust administrative remedies); Taha v. I.N.S., 828 F. Supp. 362, 364 (E.D. Pa. 1993) (dismissing complaint for failure to state a claim even under liberal construction of pleadings).

## BACKGROUND

Sperazza filed for Chapter 7 bankruptcy in October 2005.  Bankruptcy Ct. Finding of Fact No. 1 ("FF 1").  He initiated this proceeding in January 2007 in order to discharge his student loans from the University of Maryland.[1]  Sperazza is unmarried with no dependents.  FF 4. Between 1991 and 1995, while attending the University of Maryland, Sperazza received $60,928 in student loans.  FF 11.  The university academically dismissed him in 1995, at which time he had earned 98 credits but no degree.  FF 10.  Since August 2005, Sperazza has lived with his parents in a two-story, four bedroom home in Levittown, Pennsylvania.  FF 12.  He pays neither rent nor utilities, and his parents provide most of his meals.  FF 15-16.  Although Sperazza would prefer to live alone, he has no deadline for leaving.  FF 13-14.  Sperazza itemizes his monthly expenses at $125, and he has an annual car insurance premium of $482, which he pays

---

[1] Sperazza originally received most of his loans from United Student Aid Funds, Inc., which transferred its interest in the debt to Educational Credit Management Corporation ("ECMC") subsequent to Sperazza's initial filing. FF 2.  ECMC was then substituted as a party by court order.  Id.  Sperazza is also indebted to the University of Maryland directly in the amount of $7,347.38, but the university has apparently chosen not to appear or defend this action, and Sperazza has not sought a default.  FF 3.

in bimonthly installments.  FF 14-15.  The Bankruptcy Court was unable to determine Sperazza's

monthly obligation on his outstanding loans, Bankruptcy Ct. Op. at p. 23, perhaps because he has

never made a voluntary payment on his debt.  FF 39.

From 1995 to 2001, Sperazza maintained sporadic employment as, *inter alia*, a librarian,

an archivist, a baker, and a retail clerk.  See FF 18-27.  He had steady employment from 2001 to

2003, during which time he earned between $20,000 and $32,000 annually and contributed

$2,240 to a retirement savings plan.  FF 29.  Sperazza has not sought employment since October

2005, choosing to focus his efforts on prosecuting this bankruptcy proceeding.  FF 30.  He is also

"not interested in securing employment he considers repetitious, boring, and low paying."  FF 42.

Beginning in approximately 2004, Sperazza earned income through participation in medical

studies.  FF 32.  His tax returns indicate that he made at least $11,550 in 2004, $11,075 in 2005,

and $6,000 during the first half of 2006.  Id.  At the time of his bankruptcy proceeding, Sperazza

was a physically health individual who wrote reasonably well and, although he claimed to have a

learning disability, never introduced evidence to support his claim.  FF 34-36.  The Bankruptcy

Court concluded that Sperazza "probably has marketable skills which could assist him in

securing employment in the Philadelphia region."  FF 43.

Applying the facts as it found them after a one-day trial, the Bankruptcy Court determined

that Sperazza had not established undue hardship and refused to discharge his loans.  Bankruptcy

Ct. Op. at pp. 14-15, In re Sperazza, 366 B.R. 397, 406 (Bankr. E.D. Pa. 2007).

Because Sperazza is proceeding *pro se*, the Court will not require him to specifically

articulate a challenge to the trial court's findings in technical legal prose.  Dluhos, 321 F.3d at

369.  Even under a liberal understanding of Sperazza's brief, however, the Court does not discern

3

a dispute with the trial court's factual findings so much as a challenge to its application of the law to the facts and the weight given to certain facts above others.[2]  For example, Sperazza asserts that he is a "guest" and not a resident in his parents' house because he and his parents are unhappy with the current living situation and it is his intention to leave at a later date.  See Appellant's Br. at p. 3 ("I was a guest when I moved in, and still am, and the only agreement [my parents and I] made to each other is that I would move out as soon as I was able to.").  Sperazza does not, however, challenge the findings that he pays no rent and has no deadline to leave.  Based on an independent review of the record and the Bankruptcy Court's findings, and mindful that the findings should stand unless clearly erroneous, In re Trans World Airlines, Inc., 145 F.3d at 131, the Court adopts the trial court's findings of fact.

## ANALYSIS

The Bankruptcy Code does not allow a Chapter 7 debtor to discharge educational loans "unless excepting such debt from discharge . . . will impose an undue hardship on the debtor and the debtor's dependents."  11 U.S.C. § 523(a).  In order to establish undue hardship, a debtor must demonstrate that:  (1) based on his current income and expenses, he cannot maintain a minimal standard of living for himself and his dependents if forced to repay the loans; (2) additional circumstances indicate that the debtor's status is likely to persist for a significant portion of the loan repayment period; and (3) the debtor has made good faith efforts to repay the

---

[2] In a section of his brief entitled "basis of appeal," Sperazza asserts that the Bankruptcy Court errored by "overlooking or ignoring several key points that I made in my testimony concerning my long-term economic situation, by not giving the proper weight to certain documents that I submitted into evidence . . . and finally by apparently not believing me or by not giving sufficient credit to my argument which I supported in my brief and at trial with a flood of case-law.").  Appellant's Br. at p. 2.  To the extent that Sperazza's claim that the trial court did not believe him is a challenge of the court's factual findings, the Court notes that Sperazza's credibility was not central to the resolution of this case, as he freely admitted the most damning facts in his case, such as that he chose not to work in order to focus on attempting to discharge his debt through this bankruptcy proceeding.  FF 30-31.

loans.  <u>Pa. Higher Educ. Assistance Agency v. Faish (In re Faish)</u>, 72 F.3d 298, 304-05 (3d Cir.

1995) (adopting standard set forth in <u>Brunner v. N.Y. State Higher Educ. Servs. Corp. (In re</u>

<u>Brunner)</u>, 831 F.2d 395, 396 (2d Cir. 1987)).  It is the debtor's burden to establish each prong of

the <u>Faish</u> test by a preponderance of the evidence, all prongs must be satisfied, and if "one of the

elements of the test is not proven, the inquiry must end there, and the student loans cannot be

discharged."  <u>Brightful v. Pa. Higher Educ. Assistance Agency (In re Brightful)</u>, 267 F.3d 324,

327-28 (3d Cir. 2001).  This "test must be strictly construed," and "equitable concerns or other

extraneous factors not contemplated by the test may not be imported into the analysis."  <u>Id.</u> at

328.  Strict application of the <u>Faish</u> factors "safeguards the financial integrity of the student loan

program by not permitting debtors who have obtained the substantial benefits of an education

funded by taxpayer dollars to dismiss their obligations merely because repayment of the

borrowed funds would require some major personal and financial sacrifices."  <u>Id.</u>

      **1.**    **The First <u>Faish</u> Factor**

Sperazza must first show that repaying his loans would deprive him of a minimal

standard of living.  <u>Id.</u> at 306.  This requires more than just a "showing of tight finances," but

rather "an examination of the debtor's current financial condition to see if payment of the loans

would cause his standard of living to fall below that minimally necessary."  <u>Faish</u>, 72 F.3d at

306-07.  A review of prior cases where the Third Circuit declined to find undue hardship

suggests that Sperazza cannot meet this initial hurdle.  In <u>Faish</u>, the debtor had a government job

earning approximately $27,000 a year, was unmarried with an eleven-year-old son, and suffered

from "significant" health problems, including Crohn's disease and back pain.  <u>Id.</u> at 300.  She

supported herself and was concerned about the quality of her neighborhood, hoping to save

money in order to move into a better area.  Id.  The debtor had a principal debt of roughly $31,000, and had repaid about $4,600 of that debt by the time of her bankruptcy.  Id.  The Third Circuit declined to discharge her loans, finding that she failed the first Faish factor.  Id. at 307.

The Third Circuit also declined to discharge the Chapter 7 debtor's loans in Brightful. 267 F.3d at 330.  The debtor, a 46 year-old single parent with a 14 year-old son, earned about $8,500 in the year she sought discharge, and lived with her sister in "sub-marginal" conditions. Id. at 326 (internal quotation omitted).  She also suffered from "glaring psychiatric problems" that rendered her "emotionally unstable."  Id.  (internal quotation omitted).  The district court discharged Brightful's loans, but the Third Circuit reversed, finding that although "Brightful's hardship [was] real," it was not undue "under the Faish test."  Id. at 331.[3]

Sperazza, by comparison, lives at his parents' four bedroom home suburban home with no deadline to leave, pays no rent or utilities, and has no dependents.  FF 4, 12, 15-16.  He has not made a single voluntary payment on his debt.  FF 39.  He was able to maintain sporadic employment from 1995 to 2003, and admits that he has not sought employment since 2005 because he felt his time was better spent prosecuting this bankruptcy.  FF 30-31.  Sperazza has repeatedly admitted that he is able to work, but would prefer not to "drain [his] energies on a menial job."  FF 31.  Through his participation in medical studies, Sperazza earned at least $11,000 in 2004 and 2005, and was on pace to earn $12,000 in 2006.  FF 32.  In sum, Sperazza

---

[3] The Third Circuit discussed these facts with respect to the second prong of the Faish analysis after "assum[ing], for the sake of argument," that Brightful satisfied the first prong because of the lack of record evidence concerning Brightful's expenses.  Id. at 328.  The Court feels that it is appropriate to discuss these facts in reference to Sperazza's failure to meet the first prong because Sperazza's expenses were adduced at his trial and therefore this Court has a basis upon which to review the trial court's analysis.  Moreover, the purpose of reviewing the Brightful facts here is to demonstrate how much more comfortable Sperazza is than Brightful, and it is not necessary to have a complete record of Brightful's circumstances to make this point.

does not have the dependents that Faish and Brightful had, does not suffer from the chronic conditions Faish had or the psychiatric problems that dogged Brightful, and has earned more money per year ($11,000) than Brightful earned during the year the Third Circuit declined to discharge her loans ($8,500).  His four bedroom suburban residence is more comfortable than the "sub-marginal" conditions in which Brightful lived, 267 F.3d at 329, and Sperazza does not fear the quality of his neighborhood like the debtor in Faish.  72 F.3d at 300.  It is thus apparent that the financial difficulties of the debtors in Faish and Brightful were "far more serious than any short-term, belt-tightening that may be required of [Sperazza] in order to repay [his] student loan obligation." id. at 307, and the Bankruptcy Court was correct in finding that Sperazza failed to meet the first prong of the Faish analysis.

Having confirmed that Sperazza could maintain a minimal standard of living while repaying his debt, the Court's inquiry would normally be done.  Because Sperazza is *pro se*, however, and in an abundance of caution, the Court will review the Bankruptcy Court's conclusions as to the second and third prongs of the Faish test.

### 2.    The Second Faish Factor

Under the second step of the Faish analysis, the Court considers whether the Bankruptcy Court correctly determined that Sperazza's conditions were likely to persist for a significant portion of the repayment period.  72 F.3d at 305.  The debtor must demonstrate "a total incapacity . . . in the future to pay [his] debts for reasons not within [his] control."  Brightful, 267 F.3d at 328 (internal citations and quotations omitted).  Sperazza has been quite direct in stating that, although he could work, he chooses to focus his time and energy on pursuing dischargeability in bankruptcy and holding out for what he considers "appropriate" employment.

FF 30-31. Sperazza's choice not to work is squarely at odds with the precept that debts are only discharged when the situation is beyond the debtor's control, and his choice to hold out for "appropriate" employment is similar to that of the <u>Faish</u> debtor, whose argument that "her inability to find a job in her chosen field militates in favor of discharge" did not succeed at the Third Circuit. 72 F.3d at 306-07. This Court is thus satisfied that the Bankruptcy Court properly found that Sperazza did not meet his evidentiary burden with respect to the second <u>Faish</u> prong.

### 3.   The Third <u>Faish</u> Factor

Finally, Sperazza must demonstrate that he has made good faith efforts to repay his loans. <u>Faish</u>, 72 F.3d at 305. This "inquiry is to be guided by the understanding that undue hardship encompasses a notion that the debtor may not willfully or negligently cause his own default, but rather his condition must result from factors beyond his reasonable control." <u>Id.</u> (internal citations and quotations omitted). Sperazza has not made a single voluntary payment on his debt obligation, FF 39, and has not sought to restructure his loans, FF 40, while during the same period of indebtedness he has made multiple debt payments to his parents, FF 16, and contributed over $2,000 to a retirement savings plan. FF 29. Sperazza's choice not to pay his educational debt while at the same time placing money in a retirement fund indicates that Sperazza has at times had sufficient disposable income to direct funds to non-essential concerns. Moreover, the payments to Sperazza's parents demonstrate that he has some concept of what it is to repay a debt, and his choice not to restructure his loans or make even a single voluntary payment suggest that he has no interest in repaying his educational debt.

Indeed, by his own testimony, Sperazza has "devoted an increasing amount of time and effort in trying to have my student loans discharged in bankruptcy court," FF 30, pursuing this

path at the hazard of gainful employment.  The Court is thus faced with a debtor who has testified under oath that he is actively choosing not to work so that he can avoid payment of his educational debts.  If the Faish test is to retain any integrity whatsoever, it has to be that Sperazza has not demonstrated a good faith effort to repay his loans.  The Bankruptcy Court so found, and this Court will affirm.

### 4.    Sperazza's Arguments in Support of Discharge

Sperazza has filed a 40-page, single-spaced brief raising dozens reasons why this Court should discharge his loans.  While the Court is not obliged to address every argument, see, e.g., United States v. Cooper, 437 F.3d 324, 329 (3d Cir. 2006) (stating in the context of sentencing a criminal defendant that the "court need not discuss every argument made by a litigant if an argument is clearly without merit"), it will attempt to analyze several of the more cogent assertions in Sperazza's brief.

Sperazza's primary argument is that he did not receive the substantial benefits of his education because he did not complete his degree.  The Third Circuit considered this argument at length in Brightful, where it observed that its decision not to discharge the debtor's loans "might appear harsh" because "Brightful does not have her college degree and is unlikely ever to attain it."  267 F.3d at 331.  Although her situation was "unfortunate," the Third Circuit explained that it did "not excuse Brightful from meeting her student loan obligations" because:

> [F]ederal student loan programs were not designed to turn the government into an insurer of educational value.  Students who benefit from guaranteed loan programs normally would not be eligible to receive any financing or only financing at a higher rate of interest.  Since the decision of whether or not to borrow for a college education lies with the individual, it is the student, not the taxpayers, that must accept the consequences of the decision to borrow . . . Here, Brightful struck her bargain, she took her risk, and unfortunately, things did not work out as planned.  Brightful's

> hardship is real, but under the <u>Faish</u> test, it is not 'undue,' and therefore we cannot discharge her obligation to repay her student loans.

<u>Id.</u> (internal citations omitted).

Sperazza also suggests that the Court should adopt a less restrictive framework than the <u>Faish</u> formulation, such as that set forth in <u>Educ. Credit Mgmt. Corp. v. Polleys (In re Polleys)</u>, 356 F.3d 1302, 1309 (10th Cir. 2004).  Although as an initial matter the Court notes that the <u>Polleys</u> decision adopted the <u>Brunner</u> test just as <u>Faish</u> did, it is fair to say that some of the language in <u>Polleys</u> contemplates a less restrictive approach to loan discharge for undue hardship. <u>See</u>, <u>e.g.</u>, <u>id.</u> at 1310 ( "courts should base their estimation of a debtor's prospects on specific articulable facts, not unfounded optimism") (internal citation omitted).  It is not for this Court to parse the differences between <u>Polleys</u> and <u>Faish</u>, however, because federal courts of Pennsylvania are bound by the decisions of the United States Court of Appeals for the Third Circuit, which has adopted the test laid out in <u>Faish</u>.  72 F.3d at 306 ("We therefore hold that the <u>Brunner</u> 'undue hardship' test must now be applied by bankruptcy courts within the Third Circuit.").  Moreover, the Supreme Court of the United States has declined to reconsider the Third Circuit's opinion in <u>Faish</u>, 518 U.S. 1047 (1996) (denying a writ of certiorari), and an "overwhelming majority of circuits has now adopted the Second Circuit's three-part <u>Brunner</u> test."  <u>Educ. Credit Mgmt. Corp. v. Frushour (In re Frushour)</u>, 433 F.3d 393, 400 (4th Cir. 2005) (citing cases from the Third, Fifth, Sixth, Seventh, Ninth, Tenth, and Eleventh Circuits).  This Court is therefore satisfied that the law regarding discharge for undue hardship is well-settled in the Third Circuit, and will take direction from <u>Faish</u>.  72 F.3d at 306.

Finally, Sperazza faults the Bankruptcy Court for failing to take judicial notice of his

condition, as the courts did in In re Doherty, 219 B.R. 665, 669 (Bankr. W.D.N.Y. 1998), and In re Mosley, 830 B.R. 832, 844-45 (Bankr. N.D. Ga. 2005). See also Brightful, 267 F.3d at 330 ("It was appropriate for the Bankruptcy Court, as the trier of fact, to assess Brightful's testimony and draw reasonable conclusions regarding her mental and emotional state."). As the Doherty opinion explains, it is often appropriate to take judicial notice of the debtor's condition in undue hardship cases "because all dischargeability litigation involves real persons who are *debtors* under the Bankruptcy Code, and cannot afford to hire medical experts to testify to the effect of their disease on their earning capacity." Id. at 669 (emphasis in original). But though Sperazza is correct to suggest that the Bankruptcy Court may take judicial notice of his condition, he overlooks the fact that the trial court in this matter did just that, explaining that:

> As of the time of trial in this proceeding, Mr. Sperazza was a physically healthy individual who was not receiving treatment for any medical condition. He does believe, though, that he has dyslexia, but offered no medical evidence of such a condition . . . *Upon reviewing his submissions to this court, and observing him in court*, I find that Mr. Sperazza writes reasonably well and clearly, and speaks reasonably well and clearly, albeit his speech is hesitant at times. He has performed his own legal research in this proceeding, citing and quoting decisions he believes are supportive of his legal position . . . Based upon his employment history, if Mr. Sperazza has a learning disability such condition does not rise to a level of severity that precludes his employment in a variety of areas: retail; bakery worker; restaurant worker; researcher; and librarian.

FF 34-35, 41 (internal citations to record omitted) (emphasis supplied). To the extent Sperazza's quarrel is actually with the trial court's factual finding that he is not disabled, the Court finds no clear error, as in addition to observing Sperazza at trial and reviewing the record, the Bankruptcy Court noted that Sperazza "offered no medical evidence" of any medical condition, FF 34, and "has not been diagnosed with or treated for any learning disability." FF 36. It is thus clear that the Bankruptcy Court observed Sperazza's mental condition and considered its effect on his

11

prospects of employment.  Concluding that Sperazza could work but chose not to, the

Bankruptcy Court cannot be faulted for declining to conduct its own research concerning what, if

any, mental disorder might have afflicted Sperazza.  See In re Greco, 251 B.R. 670, 677 (Bankr.

E.D. Pa. 2000) (holding that the debtor had failed to meet her burden under the second prong of

Faish because "[t]he testimony offered by the Debtor at trial does not reveal a diligent effort on

her part to secure a stable, salaried job," and "the Debtor has not demonstrated any efforts to seek

employment in another field") (*quoted with approval in* Brightful, 267 F.3d at 329 n.4).

An appropriate Order accompanies this Memorandum Opinion.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JEFFREY J. SPERRAZZA | : | |
| | : | |
| Appellant | : | CIVIL ACTION |
| | : | |
| vs. | : | |
| | : | NO.  07-CV-792 |
| UNIVERSITY OF MARYLAND, ET AL. | : | |
| | : | |
| | : | |
| Appellees | : | |

## **ORDER**

AND NOW, this 24th day of March, 2008, the decision of the Bankruptcy Court denying appellant discharge of his debt obligations to appellees is AFFIRMED.


BY THE COURT:


/s/ Thomas M. Golden
THOMAS M. GOLDEN, J.